**Bonny G. Rafel, LLC**
17 Hanover Rd. Suite 410
P.O. Box 97
Florham Park, NJ 07932-0097
Phone: (973) 845-2600
BONNY G. RAFEL, ESQ.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAMES M. SULLIVAN,<br><br>Plaintiff,<br><br>-vs-<br><br>CIGNA LIFE INSURANCE COMPANY OF NEW YORK,<br><br>Defendant. | CIVIL ACTION NO.<br>COMPLAINT |

Plaintiff, Mr. James Sullivan, by his attorney, brings this action against Cigna Life Insurance Company of New York ("Cigna") under the Employee Retirement Income Security Act ("ERISA") U.S.C. § 1001 *et.seq.* pursuant to § 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B).

1. This is a claim seeking payment of disability income benefits and other equitable relief to Mr. James Sullivan (hereinafter "Plaintiff" or "Mr. Sullivan") pursuant to his employer's ERISA Plan, namely, Tradition Long Term Disability Plan ("the Tradition Plan" or "the Plan") providing long-term disability benefits to employees of Tradition American Holdings, Inc. ("Tradition")

2. The Tradition Plan for long term disability is underwritten and funded through a contract of insurance issued by Defendant; Group Policy # BNK-960051 (the "Policy"), with an effective date of April 1, 2010.

3. As an employee of Tradition as of May 2005, Mr. Sullivan qualified as a participant in the Tradition Plan, as defined by ERISA 29 U.S.C. § 1001 et. seq., and was entitled to coverage for benefits including disability coverage.

4. Plaintiff brings this action pursuant to § 502(a)(1)(B) of ERISA (29 U.S.C. § 1132(a)(1)(B)) due to Defendant's denial of his claim for long term disability ("LTD") benefits effective April 12, 2018. The denial is in direct contravention of the Plan and the Policy's requirements, terms, and conditions because Defendant was fully aware of Mr. Sullivan's chronic medical conditions which entitle him to the payment of LTD benefits but in breach of the policy denied him LTD benefits.

5. This Complaint alleges the following: (1) Defendant unlawfully and unreasonably, arbitrarily and capriciously denied Mr. Sullivan's benefits without justification and without granting him a full and fair review of his claim for benefits; (2) Defendant improperly rejected and ignored the opinions of Mr. Sullivan's treating specialists in an attempt to deprive him of LTD benefits due; (3) Defendant improperly introduced extra-contractual requirements beyond the proof of claim set forth in the Plan; (4) Defendant improperly conducted a biased review of the claim, relying on medical file reviews instead of an examination of Plaintiff; (5) Defendant failed to provide a reasonable claims procedure that would yield a decision on the merits of Mr. Sullivan's claim within the framework of ERISA; (6) Defendant violated ERISA and its own claim procedures with the intent of furthering their own financial interests in bad faith; (7) Defendant failed to discharge its claims processing duties "solely in the interests of the [Plan] participants and beneficiaries," in accordance with U.S.C. §1104(a)(1); (8) Defendant disregarded that Mr. Sullivan was determined disabled by the Social Security Administration under a standard that requires he meet a burden

higher than the standards imposed by the Plan, i.e., that he be unable to engage in any "substantial gainful activity." 42 U.S.C. § 423(d)(1)(A).

6. By this action, Mr. Sullivan seeks (i) reinstatement of long-term disability insurance payments under Policy #BNK-960051 retroactive to April 10, 2018; (ii) prejudgment interest pursuant to 29 U.S.C. §1132(a)(1)(B) or 1132(a)(3); (iii) to obtain a judicial declaration that payment of such benefits shall continue subject to the Tradition Plan and Policy terms and conditions; (iii) costs and attorney's fees pursuant to 29 U.S.C. §1132(g) and ERISA §502(g).

## JURISDICTION, VENUE AND PARTIES

7. This Court's jurisdiction is invoked pursuant to 28 U.S.C. §1331 and 29 U.S.C. §1132 (e)(1) and §1132(f). Plaintiff's claims "relate to" an "employee welfare benefit plan" as defined by ERISA, 29 U.S.C. §1001 et. seq. The subject Tradition Plan constitutes a "plan" under ERISA.

8. Mr. Sullivan is currently and was at all times relevant to this claim a resident of Union County, New Jersey.

9. At all relevant times hereto, Mr. Sullivan was employed in New York City, NY by Tradition, the North American branch of Compagnie Financiere Tradition, one of the world's largest interdealer brokers in over-the counter financial and commodity related products headquartered in Switzerland.

10. Tradition American Holdings Inc. is the Plan Sponsor and Plan Administrator.

11. The Policy indicates that the policy is issued in New York and shall be governed by its laws.

12. Venue is proper under 29 U.S.C. §1132 (e) (2); 28 U.S.C. §1391 because an action may be brought in the district where the Plan is administered, where the breach took place, or where a defendant resides or may be found. Specifically, Plaintiff worked in New York City, NY, participated in the employee benefit plan at issue within this district, resided in this district at the time Defendant failed to deliver benefits to him, and interfered with his ERISA rights.

13. Cigna provided claims administrative and management services for the subject Policy, particularly the long term disability claim of Mr. Sullivan.

14. As of December 31, 2020, New York Life Insurance Company completed the purchase of Cigna's Group Disability benefits division and is rebranding it "New York Life Group Benefit Solutions."

15. At all times relevant to the claims asserted in this Complaint, the Plan Administrator appointed Cigna as the named fiduciary for deciding claims for benefits under the Plan and for deciding any appeals of denied claims.

16. Cigna is a fiduciary of the LTD Plan within the meaning of ERISA 29 U.S.C. §1003, 29 U.S.C. §1002 (21) (A).

17. Pursuant to 29 C.F.R. § 2560.503-1, Cigna employees have acted as the claims administrator of the Policy pursuant to which Mr. Sullivan is entitled to disability benefits under the LTD Plan.

18. The Tradition Plan documents including the Cigna Policy do not contain language granting Cigna discretionary authority to construe or interpret the terms of the Plan or to determine the eligibility for benefits.

19. Cigna lacked the discretionary authority to construe or interpret the terms of the Plan and its adverse claim determination in this matter is to be reviewed under the de novo standard of review.

20. Mr. Sullivan has exhausted all administrative remedies under the Plan claims procedure.

### THE PLAN AND APPLICABLE STANDARD OF REVIEW

21. The Policy provides monthly LTD benefits to eligible employees of Tradition if they satisfy the burden of proving their disability pursuant to the qualifiers set forth in the Policy following a ninety (90) day elimination period.

22. The Policy contains the following definition of disability:

**Disability/Disabled**

An Employee will be considered Disabled if, because of Injury or Sickness, he or she is unable to perform the material duties of his or her regular occupation, or solely due to Injury or Sickness, is unable to earn more than 80% of his or her Indexed Covered Earnings.

23. The Policy provides that the amount of Disability Income Benefits is 60% of covered earnings rounded down to the nearest whole dollar or the maximum benefit amount of $15,000.00.

24. Mr. Sullivan's' pre-disability income was $200,000.00; $16,666.66/month. Mr. Sullivan's monthly LTD benefit is $10,000 less offsets.

25. The Policy includes an offset provision for Social Security disability benefits.

26. Mr. Sullivan elected to participate in the Long Term Disability Core Plan and paid monthly premiums with after tax dollars. The LTD benefits are tax-free.

27. The Maximum Benefit period for Mr. Sullivan under the Policy is to age 65, August 17, 2026.

28. The Defendant entered into a Regulatory Settlement Agreement ("RSA") with the Departments of Insurance of each state, including New Jersey and New York on May 13, 2013.

## BACKGROUND

29. Mr. Sullivan, age 60 was a successful Wall Street Broker. For the final 12 years of his career, he worked as an Interest Rate Swap Broker, for Tradition, Inc. A Swap Broker serves as the middleman to match banks and hedge funds seeking to exchange interest rate instruments to manage their cash flows. His typical workday was hectic and competitive as he worked to execute orders and trades. He worked in front of multiple computer screens at his desk, feeding him instantaneous information on trades, orders and market conditions which he had to manage and update his clients constantly. Mr. Sullivan describes his occupational duties:

> I sit at a desk which usually seats 20 brokers. Brokers will sit / stand and jump up throughout the day. I am responsible for covering 4 screens directly in front of me as well as 2 overhead screens, at all times. We communicate verbally through direct lines or boxes and via computer using Bloomberg IM/CHAT with Bankers/traders.
>
> As the middle man/executor trades are made via OPEN OUTCRY. Open Outcry meaning orders (or prices) are shouted out to a room, as well as movement of the prices. Then waiting to execute the trade or sale. It is a very noisy and aggressive atmosphere where the competitive culture is encouraged. While the brokers are all working as a 'team' they also compete against each other and other brokerage shops. The bulk of my salary came from production-commission and bonuses.

30. Mr. Sullivan's difficulties performing his occupational duties began in 2015 due to symptoms of shingles that erupted on his face and caused the onset of postherpetic neuralgia.

31. Mr. Sullivan was on vacation in Mexico in May 2015 when he first experienced terrible pain in his face; he cut short his trip and returned to the USA. He was hospitalized at Overlook Hospital for days, and due to the outbreak of swelling and eruptions on the face he was diagnosed with shingles. However, due to a delay in diagnosing the cause of his severe right sided

facial and ear pain, medication for shingles was not initiated until his hospitalization. This delay allowed the virus to spread and damage his facial nerves, specifically the trigeminal nerve. He developed a condition of postherpetic neuralgia or "PHN." Postherpetic neuralgia occurs if nerve fibers are damaged during an outbreak of shingles.

32. Mr. Sullivan nobly struggled to continue working for approximately two years following his initial onset of symptoms, pursuing all reasonable treatment options while under the care of Board-certified pain management specialist. His treatment included neurologic care, chronic pain management, acupuncture, narcotic and gabapentin medication, and pain patches. A consultation with a Board-certified neurosurgeon at Columbia University yielded a recommendation that he continue with his multidisciplinary conservative treatment. Nothing worked sufficiently to reduce the terrible pain, and the side-effects of medications interfered further with Mr. Sullivan's concentration and focus. As a result of this Mr. Sullivan's work ability continued to decline. By late 2017, his treating pain management physician, Dr. Rohit Oza, indicated that he should consider disability leave since he had exhausted all treatment strategies but remained in severe daily pain.

## LONG TERM DISABILITY CLAIM

33. In January 2018 Mr. Sullivan filed disability claims with Cigna, his group disability insurer, and MassMutual, pursuant to a private disability policy. MassMutual approved benefits without issue and that claim has continued to this day.

34. Cigna obtained only medical records from 2018 onward and a Disability Questionnaire and Activities of Daily Living form from Mr. Sullivan. Dr. Oza, who had been treating him since 2015, supported the claim, noting that his chronic pain caused by PHN makes

him unable to perform job requirements. He explained that he has intractable pain that does not allow him to cognitively function in his current job and it was unlikely to change.

35. Cigna had the file reviewed by its employed Nurse, who disregarded that this is an occupation specific policy, and concluded that the "medical on the file would not support that the EE is unable to work in any capacity."

36. Cigna next had the medical records reviewed by Dr. Joseph Sentef, a family medicine and occupational medicine peer reviewer often hired by insurers to review files. He concluded, based on reviewing only medical records from 2018 that Mr. Sullivan is not disabled. Cigna relied on Dr. Sentef's conclusion to deny the claim.

**APPEAL**

37. Mr. Sullivan handled the initial appeal on his own, and provided a letter of support from Dr. Nicholas Yatrakis and medical records from his consultations with Dr. Karina Gritsenko, a new pain management specialist at Montefiore Medical Center. Mr. Sullivan also submitted a detailed statement dated June 30, 2018 where he explained the intensity of his job in further detail and why his PHN symptoms prevented him from performing his job duties.

38. Cigna had the appeal reviewed by Dr. Edward Negovetich hired through vendor Professional Disability Associates ("PDA") who markets solely to disability insurers for their business.

39. Dr. Negovetich copied the conclusions by Dr. Sentef, and summarily dismissed Mr. Sullivan's reported cognitive deficits and chronic pain.

40. Cigna only provided the report of Dr. Negovetich to its vocational staff, Ms. DeSantis, CRC, who did not perform any analysis of Mr. Sullivan's work duties and failed to consider all available medical evidence, in clear violation of the Regulatory Settlement Agreement

entered on May 13, 2013 which directed Cigna's vocational staff to "provide fair and reasonable evaluations considering all available medical and/or vocational evidence, both objective and subjective, both supporting impairment and supporting capacity."

41. Cigna then sent Mr. Sullivan for neuropsychological evaluation by Dr. Kenneth Kutner on September 13, 2018. The vendor company Exam Coordinators Network ("ECN") arranged for the examination for which there was a charge of $3,495.00.

42. Dr. Kutner's September 24, 2018 report to Cigna evidences his struggle to come up with a rationale to support his ultimate conclusion. He acknowledged that Mr. Sullivan's scores demonstrated <u>areas of impairments in "working memory, verbal abstract reasoning, processing speed, and visuo-spatial processing</u>." He admitted "there may be mildly decreased processing speed from ongoing pain." This should have been sufficient to find that Mr. Sullivan has some objectively verified cognitive impairments. However, Dr. Kutner disputed the validity of these findings. Without clear explanation he indicated that he felt Mr. Sullivan did not give "optimal" effort on some tests. Dr. Kutner tried to suggest that Mr. Sullivan's symptoms may be due an anxiety condition but his assessment did not include comprehensive mental health tasting upon which to base such a claim.

43. Cigna upheld the denial on September 26, 2018.

## SOCIAL SECURITY AWARD

44. Cigna had retained its vendor, Advantage 2000 to represent Mr. Sullivan for filing for SSDI benefits, which would offset the Cigna monthly benefits. Once the claim was denied, Cigna contacted Advantage 2000 and instructed them to close the claim.

45. With his own private counsel, Mr. Sullivan continued to pursue SSDI benefits.

46. Mr. Sullivan was required to undergo an IME for the SSA on April 29, 2019. Dr. Rashel Potashink concluded that he has "symptomatic right post herpetic neuralgia/neuropathic pain."

47. Following a hearing before Administrative Law Judge Ricardy Damille on May 8, 2020, Mr. Sullivan was declared disabled retroactive to January 9, 2018.

48. In Mr. Sullivan's case, the definition of disability used by the Social Security Administration is much stricter than the Cigna LTD policy. Cigna is required to evaluate whether Mr. Sullivan can perform the material and substantial duties of his regular occupation, while the Social Security Administration looked more broadly to determine if he could perform "**any substantial gainful activity**."

49. In Cigna's Regulatory Settlement Agreement of 2013, Exhibit B, "Social Security Awards and Disability Determinations", Defendant agreed to give significant weight and analysis to a claimant's approval for Social Security:

> A Social Security Disability Income ("SSDI") award by the Social Security Administration ("SSA") will be given significant weight in a claimant's favor under certain circumstances in making a Disability analysis.

50. On August 4, 2020 Plaintiff filed a voluntary appeal, through counsel, after receiving Cigna's permission to do so. Mr. Sullivan challenged Defendant's denial by submitting a detailed claim appeal pursuant to 29 U.S. C. S 1133 and 29 C.F.R. S 2560.603-1.

51. The appeal included medical evidence from 2015 through January 2020; consultative reports by Neurologists all confirming the PHN diagnosis and impairment.

52. The appeal included the neuropsychological examination performed by Dr. Freundlich, Ph.D. Dr. Freundlich is a Board-certified Neuropsychologist who has over 30 years of

experience in clinical practice, research and consulting. He also served as President of the New Jersey Psychological Association in 2018.

53. Dr. Freundlich reviewed Dr. Kutner's report and noted deficiencies with the doctor's conclusions, which lacked foundation and were contrary to the actual testing scores administered by Dr. Kutner. Dr. Freundlich administered a battery of tests, including validity markers and found that Mr. Sullivan gave full effort and was indeed cognitively compromised.

54. Dr. Freundlich's testing objectively verified Mr. Sullivan's fluctuations and deficits in areas of "attention/concentration, speed of processing, and nonverbal visuospatial skills." This coincides with Dr. Kutner's finding that Mr. Sullivan had cognitive deficits with "working memory, verbal abstract reasoning, processing speed, and visuo-spatial processing."

55. The appeal included Medical Journal articles regarding Postherpetic Neuralgia, documenting the symptoms associated with this condition and the fact that treatment is palliative at best to treat chronic pain.

56. The appeal included a statement by Mr. Sullivan's wife, a Nurse Practitioner. She chronicled her observations of her husband's chronic pain and struggles with his condition as well as the deficits in his cognition evident in their daily interactions.

57. The appeal included Mr. Sullivan's colleague's statement who noted his observations of how Plaintiff's symptoms impaired his ability to work.

58. The appeal included Cigna's Regulatory Settlement Agreement dated May 13, 2013 which outlines Cigna's agreement with nationwide State regulators to comply with certain directives in claims handling and the review of ERISA cases on appeal.

59. The appeal included the 2019-2020 medical records of Dr. John Nasr and Dr. Kenneth Levin, Board-certified Neurologists, who confirmed the PHN diagnosis and made medication changes to address Mr. Sullivan's chronic pain caused by the Postherpetic Neuralgia.

60. The appeal included the vocational evaluation performed by Mary Vasishth, MS, CRC, (a certified rehabilitation consultant). Ms. Vasishth reported that due to his medical condition, as substantiated by his doctor's assessments, and the results of the neuropsychological examinations, Mr. Sullivan is unable to perform his competitive and cognitively challenging occupation. The appeal contained the transcript of her interview with Mr. Sullivan wherein he explained the frequency, severity and duration of his symptoms that disable him.

61. The appeal included the Social Security Disability Notice of Fully Favorable Decision dated June 11, 2020, the report of the Social Security IME by Dr. Potashink, and the Social Security file.

62. Defendant reviewed the appeal, and had Dr. Siva Ayyar perform a file review. Dr. Ayyar is an Occupational Medicine doctor with no specialty in PHN. Dr. Ayyar agreed that Mr. Sullivan's neurological complaints were well documented, but decided that "these findings do not indicate the presence of an impairment or functional loss that would have prevented Mr. Sullivan from working."

63. Defendant had a peer review of the neuropsychological examinations performed by Dr. Edan Critchfield, Psy.D. who disagreed with Dr. Freundlich and concluded that no restrictions are warranted.

64. On February 3, 2021, Defendant informed Plaintiff that their review of the appeal was still underway, and they provided the reports of Dr. Ayyar and Dr. Critchfield for review,

providing an opportunity for Plaintiff to respond with "new evidence or new rationale," tolling any deadlines until the response was received.

65. On February 10, 2021, Cigna advised in writing that the statute of limitations would be "6 years from the affirmation date." [1]

66. The affirmation date in this matter is May 6, 2021.

67. On April 13, 2021 Plaintiff's counsel submitted a response to Cigna's review specifically challenging the unsupported conclusions and assumptions by Dr. Ayyar and Dr. Critchfield. Counsel provided Cigna with information from several cases in which the court found that Dr. Ayyar's opinions were unsustainable and unsupported, and demonstrated his anti-claimant bias. Cigna chose to continue to rely on Dr. Ayyar notwithstanding his lack of credibility to comment on Mr. Sullivan's impairment.

68. Plaintiff's April 2021 submission included a MassMutual Attending Physician's Statement completed by Neurologist, Dr. Nasr, confirming that "the current symptoms of intense facial pain and facial spasms make it impossible for him to work in his work environment. He cannot work in high stress work environment."

69. Plaintiff's April 2021 submission included up to date medical records of Dr. Nasr and Dr. Levin. Included was an April 2021 assessment by Dr. Levin that documented physical findings of neurologic damage to his right trigeminal nerve. Dr. Levin completed a customized questionnaire for the appeal, confirming his conviction that Mr. Sullivan is indeed totally disabled from working in his occupation from January 2018 through the present and ongoing.

70. On May 6, 2021 Cigna upheld its determination to deny the claim.

### DEFENDANT'S CONFLICT OF INTEREST

---

[1] See February 10, 2021 letter by Cigna attached as Exhibit A.

71. At all relevant times, Defendant has been operating under an inherent and structural conflict of interest.

72. Defendant as both the claims administrator and the payer of benefits under the Plan was influenced by its financial conflict of interest when evaluating and denying this expensive LTD benefit claim.

73. Defendant relied on biased employees and consultants to assist in Mr. Sullivan's claim evaluation. When the bias of their reviewers was pointed out during the appeal, Cigna continued to rely on their conclusions anyway, in breach of their fiduciary duty.

74. Defendant took no action to resolve the discrepancy between the opinions of Mr. Sullivan's treating physicians that he is totally disabled and the opinion of their medical reviewers.

75. Defendant failed to have Mr. Sullivan physically examined by any doctor and simply alleged that his reported symptoms, confirmed by objective physical exams by his treating doctors are "self reported" and not severe or impairing. They denounced his symptoms and ignored the chronicity of his objectively verified limitations.

76. Defendant failed to give any weight to the conclusion of the SSA that Mr. Sullivan is totally disabled under their strict standards, which are more restrictive than the Policy terms and conditions for disability.

77. Defendant owed fiduciary duties to Mr. Sullivan and breached those fiduciary duties by acting directly against Mr. Sullivan's interest for its own gain.

78. Upon information and belief, Defendant's employees use claim procedures and guidelines which serve as Defendant's "reasonable claims procedures" within the meaning of

ERISA, 29 C.F.R.2560.503-1(b).  The RSA constitutes claim procedures that Defendant agreed to follow in the handling of disability claims and appeals.

79. Defendant violated its own claim procedures and the RSA in handling Mr. Sullivan's claim.

## FIRST CAUSE OF ACTION

80. Mr. Sullivan incorporates the allegations contained in paragraphs 1 through #78 as though set forth at length herein.

81. Defendant failed and refused to pay Mr. Sullivan LTD benefits.

82. Plaintiff's claim is brought pursuant to 29 U.S.C. § 1132(a)(1)(b) which permits a plan participant to bring a civil action to recover benefits due under the terms of a plan, to enforce his rights under the terms of a plan and /or to clarify his rights to future benefits under the terms of a plan.

83. An actual controversy exists between Mr. Sullivan and Defendant arising out of the events alleged herein above. Specifically, Defendant has no legal basis for denying Mr. Sullivan LTD benefits.

84. Mr. Sullivan has satisfied all conditions precedent under the Plan and is thus eligible to receive benefits for Mr. Sullivan has not waived or otherwise relinquished his entitlement to benefits under the Plan.

85. The evidence establishes Plaintiff's right to LTD benefits based on his inability to perform the material duties of his occupation.

86. Contrary to clear, compelling and substantial medical evidence, Defendant wrongfully denied Mr. Sullivan's total disability claim and has wrongfully maintained that denial to this date. Defendant's denial of the benefits was contrary to and in breach of the terms of the Plan and the Policy.

87. Defendant's evaluation of Mr. Sullivan' claim was adversarial, the product of bias, self-interest and the structural conflict of interest inherent in Defendant's dual role as the party deciding entitlement to benefits and the source of the payment of benefits. As a result, Defendant issued a rubber stamp affirmance of the denial of benefits that failed to meet the requirements of a full and fair review. Defendant's conduct was so grossly biased and ignorant of the well- reasoned opinions of the treating doctors, the decision of the Social Security Administration and the SSA independent Neurological examination that it violates its fiduciary responsibilities and duties required under ERISA.

88. Defendant's evaluation of Mr. Sullivan's claim was contrary to ERISA fiduciary requirements mandating the application of "higher than marketplace quality standards" as set forth in Metropolitan Life Ins. Co. v. Glenn, 128 S. Ct. 2343 (2008). Defendant violated the higher-than-marketplace standards that ERISA imposes on insurers.

89. Defendant is required to discharge its duties "solely in the interests of the participants and beneficiaries of the plan."

90. Defendant represented to Mr. Sullivan that benefits would be paid if he met the terms and conditions of the Plan, but failed to fulfill its obligation to discharge its duties solely in the interest of Plan participants.

91. As a direct and proximate result of the aforementioned conduct of the Defendant in failing to pay Mr. Sullivan LTD benefits, Mr. Sullivan has been damaged in an amount equal to the amount of benefits to which he is entitled under the terms of the Plan, plus other equitable relief and interest, for a total amount to be determined at the time of trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment as follows:

1. That the Court enter judgment in Plaintiff's favor and against the Defendant and the Court order the Defendant to reinstate Plaintiff's long-term disability benefits and pay benefits owed in arrears since April 10, 2018, as well as issue ongoing benefits conditioned upon Plaintiff continuing to meet the policy's terms and conditions.

2. That the Court award Plaintiff pre-judgment interest on all overdue benefit payments and all other contractual and/or equitable relief to which he may be entitled under the law for ERISA violations.

3. That the Court award Plaintiff attorney's fees pursuant to 29 U.S.C. §1132(g) and ERISA § 502(g) and the costs of suit.

    Respectfully submitted,

Dated: October 27, 2021        **s/ Bonny G. Rafel**
        Bonny G. Rafel, Esq.

        BONNY G. Rafel LLC
        17 Hanover Road, Suite 410
        P.O. Box 97
        Florham Park, NJ 07932-0097
        Phone: (973) 845-2600
        Fax: (973) 845-2232
        bonny@bgrafel.com